1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEROME J. MACK,<br><br>        Plaintiff,<br><br>      v.<br><br>CALIFORNIA DEPT. OF CORRECTIONS<br>AND REHABILITATION, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:15-cv-01600 --- JLT<br><br>ORDER GRANTING IN PART THE MOTION TO DISMISS; ORDER DENYING AS MOOT THE SPECIAL MOTION TO STRIKE<br><br>(Docs. 48, 52) |

I.     **Background**

Since September 1986, the plaintiff has been employed by the California Department of Rehabilitation and Corrections. (Doc. 40 at2)  During his tenure, he has worked at several of the CDCR's prison facilities and steadily improved his position in terms of salary and job duties. Id. at 3. In 1999, Mack transferred to CCI.  Id. at 3.  Mack claims he was subject to unlawful personnel actions at CCI due to his race.

In June 2013, Mr. Mack alleges he documented an incident of staff misconduct involving his immediate supervisors, David Mason and Brad Sanders.  (Doc. 40 at 4)  In December 2013, Mack sought to transfer to the California Men's Colony.  Id.  CCI's Warden, Holland, approved the transfer. Id.  However, the transfer did not occur because Mason and Sharon McKay—a subordinates of Holland's—told the sergeant with whom he had to interview at CMC, that Mack was the subject of a

1

1 pending personnel investigation.  Id.  Mack had not been notified of a pending personnel investigation

2 and did not learn of it until April 2014.  Id.

3      Mack applied for a Lieutenant position at CCI in February 2014.  (Doc. 40 at 4)  He was

4 denied the promotion and told that it was due to a mistake by Holland and he would be reconsidered

5 for the position later in the month.  Id.  However, he was not. Id.

6      In May 2014, Mack filed a complaint with the EEOC/DEFH and raised claims of

7 discrimination and retaliation.  (Doc. 40 at 4)  The next month, Mack attended a mandatory EEO

8 training.  Id. at 4-5.  At the training, Brad Sanders asked the trainer a question that involved a

9 hypothetical situation in which a person making an EEOC complaint was, at that time, the subject of a

10 personnel investigation.  Id.  Mack felt the question was meant to "target and ridicule" him.  Id. at 5.

11 Also, during the training, the attendees were asked to participate in a role-playing exercise involving a

12 claim of retaliation.  Id.  Mack felt uncomfortable.  Id.  Mack complained about the incident, and other

13 incidents, soon after.  Id.  The CDCR, through Associate Warden Garcia, responded and ordered

14 Mack and others listed in his complaint to refrain from interaction other than that required by their job

15 duties.  Id.  In early June and again in July 2014, Mack amended his EEOC/DFEH complaint but the

16 conditions worsened.  (Doc. 40 at 5)

17      In July 2014, Mack had a promotional interview at Ironwood State Prison.  (Doc. 40 at 5)

18 Though Mack was selected initially for the promotion, it fell through after a coworker told staff at

19 Ironwood that Mack was the subject of a personnel investigation.  Id. at 6.  This occurred also in

20 connection with a promotional opportunity at Wasco State Prison in the same month.  Id.  Mack

21 alleges he did not learn of this personnel investigation until December 2014.  Id.  Notably, at an

22 administrative hearing related to Mack's whistleblower complaint[1] on August 12, 2014, Garcia

23 testified that he was not aware of any personnel investigations related to Mack.  Id.  However, Garcia

24 testified he had sought an internal affairs investigation of Mack.  Id.  On August 19, 2014, Mack was

25 temporarily reassigned due to a personnel investigation.  Id.

26      In September 2014, Holland denied Mack's request for an "out of class assignment."  (Doc. 40

27

28        [1] This complaint was not sustained though "Mason was found to be deceptive due to providing multiple accounts of the circumstances surrounding the allegations against [Mack]." (Doc. 40 at 10)

at 7)  Later in the month, Mack was interviewed for a promotion at CCI.  Mack contends that the panelists assigned to conduct the interview had conflicts of interest because they were aware of the pending personnel investigations and the "ultimate adverse action" resulting therefrom.  Id.  Mack was not selected and though a person of the same race as Mack was selected, this person was "stripped" of his promotion by Holland.  Id. at 7-8.  Once again, in September 2014, Mack again filed a complaint with the EEOC/DFEH.  Id.

In December 2014, the Office of Internal Affairs notified Mack that he was under investigation for his action related to his conduct when attending a medical procedure performed on an inmate. (Doc. 40 at 8)  Internal Affairs sustained one of the allegations though Mack contends it was as a result of several witnesses providing "false and inconsistent testimony."  Id

In June 2015, Mack was denied a promotion at Corcoran State Prison and a Caucasian person with less experience received the job.  (Doc. 40 at 8)  Mack alleges that Sharon McKay notified all facilities with promotional opportunities available of Mack's pending personnel investigation.  Id.

In February 2015, Mack was given an "Adverse Personnel Action" related to misconduct occurring in January 2014.  (Doc. 40 at 9)  Mack contends the APA was sustained due to false statements made by Garcia and Mason.  Id.  It resulted in his pay being lowered by five percent for six months.  Id.

In August 2015, Mack was given another Adverse Personnel Action by Holland.  (Doc. 40 at 9)  In it, Mack was accused of leaving his post without notifying his supervisor, Mason.  Id.  This resulted in Mack losing pay for ten months.  Id.

## II.  Motion to Dismiss/Special Motion to Strike

In the motion to dismiss, the defendants argue that they are immune from liability based upon the Noerr-Pennington doctrine and/or that the complaint should be stricken as a violation of the Anti-SLAPP statute.  Likewise, the motion to dismiss argues that the complaint violates the Rooker-Feldman doctrine, the Younger doctrine abstention, res judiciata and the Eleventh amendment immunity, among other arguments.

///

///

1

### A.    Requests for Judicial Notice

2        The defendants request the Court take judicial notice of decisions of the SPB in case numbers

3    15-0147, 15-512, 15-1498, 14-01780W.  (Doc. 51)  The plaintiff also asks the Court to take judicial

4    notice of the outcome of SPB decision 15-1498 (Doc. 62 at 2).  Despite this, however, the plaintiff

5    objects to the Court taking judicial notice of the documents proposed by the defendants *despite that*

6    one of the documents is the same as the one for which he seeks judicial notice.

7        The Court may take judicial notice of facts that are "capable of accurate and ready

8    determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid.

9    201(b)(2).  The Court must take judicial notice for a judicially noticeable fact "if requested by a party

10   and supplied with the necessary information." Fed.R.Evid. 201(c)(2).  Here, the parties agree the Court

11   may take judicial notice of the SPB decisions and, indeed, for this proposition cite to the same

12   authorities.  Thus, the Court **GRANTS** the requests and the Court will take judicial notice of the fact

13   that the SPB has determined these actions and the dates on which it did so.  The Court will also take

14   notice of the fact that the plaintiff has not sought writ relief after any of the SPB decisions at issue.[2]  It

15   **DENIES** the defendants' request that the Court to take judicial notice of the declaration of Sharon

16   McKay because this is not a proper document for judicial notice.  Likewise, as to the motion to

17   dismiss, the Court will not consider the declarations submitted by the plaintiff (Docs. 59, 63-65) as

18   doing so is improper on a motion brought under Fed. R. Civ. P. 12(b).

19

### B.    Statute of Limitations for the Whistleblower Claim

20       The defendants argue that the whistleblower claim is not timely because it was filed more than

21   one year after the events giving rise to the claim or more than one year after the SPB issued its

22   decision.  (Doc. 49 at 25-27)  Notably, California Government Code § 8547.8 (West) provides, "[A]ny

23   action for damages [in a "whistleblower" complaint] shall not be available to the injured party unless

24   the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a),

25   and the board has issued, or failed to issue, findings pursuant to Section 19683."

26

27

28       [2] The Court may take judicial notice of the public filings of the Kern County Superior Court.  Fed. R. Evid. 201(b)(2).

4

The parties agree that the SPB issued its findings on September 18, 2014.[3] (Doc. 49 at 27; Doc. 60 at 11)  However, they disagree as to whether the statute of limitation is tolled during the 30-day period (plus, the plaintiff contends, an additional five days if the decision is mailed) before the decision becomes final.  Notably, in <u>State Board of Chiropractic Examiners v. Superior Court</u>, 45 Cal.4th at 971, the California Supreme Court considered the language of § 8547.8 as follows:

> Section 8547.8(c) imposes liability "in an action for damages" on "any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee" for disclosing improper governmental activities or unsafe conditions. But this provision includes an important caveat: "However, any action for damages *shall not be available* ... unless the injured party has first filed a complaint with the State Personnel Board ..., and the board *has issued, or failed to issue, findings pursuant to Section 19683.*" (§ 8547.8(c), italics added.) Section 8547.8(c) refers only to the issuance of "findings," nothing more. On its face, it does not require the complaining employee to petition the State Personnel Board for a hearing before an ALJ, nor does it require the employee to seek writ review of the board's findings. Section 8547.8(c) also makes express reference to section 19683, thereby clarifying the precise type of findings that satisfy the caveat.

> Section 19683, subdivision (a), provides: "The State Personnel Board shall initiate a hearing or investigation of a written complaint of reprisal or retaliation ... within 10 working days of its submission. The executive officer shall complete *findings* of the hearing or investigation within 60 working days thereafter...." (Italics added.) This provision clearly uses the term "findings" to  refer to the initial decision of the board's executive officer (issued within 70 days of the filing of the complaint), and therefore section 8547.8(c)'s express cross-reference to section 19683 indicates that this initial decision constitutes the "findings" that satisfy section 8547.8(c).

Nothing in the Supreme Court's analysis indicates that the statute of limitations is tolled during the period between which the Executive Officer issues the findings and the 30-day period within which the parties may file for a petition for writ of administrative mandamus.  Cal. Code Civ. Proc § 1094.5; Cal. Gov. Code § 11523 [The petition for writ of administrative mandamus must be filed within 30 days "after the last day on which reconsideration can be ordered."]  In short, the statute of limitations appears to run from the issuance of the findings and not from when the findings become "final." Thus, because the complaint initiating this action (assuming the claim relates back) was filed on October 20, 2015, it was not filed timely.

On the other hand, the plaintiff contends—though without citation to any authority—that because the findings of the Executive Director were mailed, the finality of the determination was

---

[3] Because the defendants do not contend that the September 18, 2014 findings by Executive Officer, Suzanne Ambrose, are not the key findings, the Court accepts this as the operative date.

5

tolled for five days.  The Court disagrees.  California Code of Civil Procedure § 1013 does not extend jurisdictional statutes of limitations. <u>Fritts v. County of Kern,</u> 135 Cal.App.3d 303, 307–308 (1982) [Section 1013 does not extend the 30-day period to file a complaint against a public entity after the trial court waived the claim filing requirement]; <u>Smith v. City and County of San Francisco</u>, 68 Cal.App.3d 227, 231–232 (1977) [Section 1013 does not extend the period for filing an action against a public entity after the tort claim is denied].  In <u>Mario Saikhon, Inc. v. Agricultural Labor Relations Board,</u> 140 Cal.App.3d 581, 582 (1983), the Agricultural Labor Relations Board issued findings that Saikhon committed unfair labor practices and mailed notice of the findings the same day.  Saikhon filed his petition for writ of mandate 33 days later. <u>Id</u>. The court dismissed the petition as untimely because it was required to be filed 30 days after the issuance of the findings.  <u>Id</u>. On appeal, Saikhon argued that he was entitled to the extra five days provided by § 1013 because the findings were mailed to him. <u>Id</u>. at 583.  In rejecting this argument, the Court of Appeal held,

> Section 1013, subdivision (a) by its terms deals only with the "case of service by mail," and with acts or responses which must be performed within a prescribed period "after the service" of a document. Labor Code section 1160.8 does not say the petition for review must be filed within 30 days after service of the Board's order; it requires the petition be filed within 30 days of the "issuance" of the Board's decision. Only if "issuance" is synonymous with "service" would section 1013, subdivision (a) apply in this case.

The court held similarly in <u>San Mateo Fed'n of Teachers v. Pub. Employment Relations Bd.,</u> 28 Cal.App.4th 150, 153 (1994), where the court determined that, "[t]he statutory time does not start with 'service' as required by section 1013, subdivision (a), but with issuance.'" Thus, the motion is **GRANTED** without leave to amend as to the Tenth cause of action.

### C.      Noerrr-Pennington

The Noerr-Pennington doctrine immunizes from liability those who petition any branch of government for redress.  <u>Manistee Town Ctr. v. City of Glendale</u>, 227 F.3d 1090, 1092 (9th Cir. 2000).  The doctrine applies to actions brought under 42 USC § 1983 that are founded upon petitions to public agencies.  <u>Id.</u>  The doctrine applies to public agencies petitioning other public agencies.  <u>Id.</u> Noerr-Pennington protects conduct that incidental to the government petition as well as that which is incidental to it.  <u>Freeman v. Lasky, Haas & Cohler</u>, 410 F.3d 1180, 1185 (9th Cir.2005).

Noerr-Pennington does not protect sham actions. Sham conduct may involve filing a single

1   lawsuit (<u>Kottle v. Northwesr Kidney Centers</u>, 146 F.3d 1056, 1060 (9th Cir. 1998)) that is "objectively

2   baseless in the sense that no reasonable litigant could realistically expect success on the merits" and

3   "an attempt to interfere directly with the business relationship of a competitor through the use of the

4   governmental process—as opposed to the outcome of that process." <u>Hard 2 Find Accessories, Inc. v.</u>

5   <u>Amazon.com, Inc.</u>, 2014 WL 6452173, at *3 (W.D. Wash. Nov. 17, 2014) citing <u>Rock River</u>

6   <u>Communs., Inc. v. Universal Music Group, Inc</u>., 745 F.3d 343, 351 (9th Cir.2014).  It may also

7   include filing multiple lawsuits—whether some have merit—if they are filed for the purpose of injury

8   a rival or where the opponent makes intentional misrepresentations to the court that "deprive the

9   litigation of its legitimacy."  <u>Kottle</u>, at 1060.

10          In <u>White v. Lee</u>, 227 F.3d 1214, 1231 (9th Cir. 2000), the Court recognized that the doctrine

11   extends to all types of cases.  The Court observed, "Noerr–Pennington is a label for a form of First

12   Amendment protection; to say that one does not have Noerr–Pennington immunity is to conclude that

13   one's petitioning activity is unprotected by the First Amendment."  However, the Court was quick to

14   add, "We do not mean to imply that the converse is true. Whether or not Noerr–Pennington provides

15   greater protection than the First Amendment is a question we need not consider in this case."  <u>Id</u>. at

16   1232, n.14.

17          Notably, however, public employees *do not* have First Amendment protection except when

18   speaking as private citizens on topics of public concern. <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 420

19   (2006).  Indeed, "[s]peech that deals with individual personnel disputes and grievances and that would

20   be of no relevance to the public's evaluation of the performance of governmental agencies is generally

21   not of public concern." <u>Eng v. Cooley</u>, 552 F.3d 1062, 1070 (9th Cir.2009). The pleading seems to

22   demonstrate that these alleged statements were not made as a private citizen.  Thus, according to

23   <u>Garcetti</u>, it appears that the First Amendment would not protect the statements.

24          On the other hand, except for the statements made at the State Personnel Board[4], all of the

25   other speech alleged relates to initiating internal investigations of plaintiff's conduct or was

26

27          [4] Even assuming Noerr-Pennington applies to petitions by one agency of a state to another agency of the same
28   state, the statements made to the Personnel Board were not made by a state agency but by an individual within the course
     and scope of his employment; this is not speech protected by the First Amendment. The defendants do not address the
     interaction between Noerr-Penington and <u>Garcetti.</u>

communicated to other employees of the CDCR.  Notably, <u>Manistee</u> found that the Noerr-Pennington

doctrine applied to petitions of a government agency to another in order to protect the petitioning

agency's constituents.  <u>Manistee</u> held, "Government officials are frequently called upon to be

ombudsmen for their constituents. In this capacity, they intercede, lobby, and generate publicity to

advance their constituents' goals, both expressed and perceived. This kind of petitioning may be nearly

as vital to the functioning of a modern representative democracy as petitioning that originates with

private citizens." <u>Manistee</u>, at1093.  The suggestion that statements made within a single government

agency does not appear to be the type of advocacy that <u>Manistee</u> intended to protect.

The Court has found no authority and the defendants have not cited any to the Court that

supports that Noerr-Pennington should apply to these circumstances.  Thus, the Court  **DENIES** the

motion to dismiss on this grounds.

### D.     Rooker-Feldman

According to the <u>Rooker-Feldman</u> doctrine, a party may not seek appellate review in federal

court of a decision made by a state court. See <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>D.C.</u>

<u>Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). "Essentially, the doctrine bars 'state-court losers

complaining of injuries caused by state-court judgments rendered before the district court proceedings

commenced' from asking district courts to review and reject those judgments." <u>Henrichs v. Valley</u>

<u>View Dev.</u>, 474 F.3d 609, 613 (9th Cir. 2007) (quoting <u>Exxon Mobile Corp. v. Saudi Basic Indus.</u>

<u>Corp.</u>, 544 U.S. 280, 284 (2005)); accord <u>Reusser v. Wachovia Bank, N.A.</u>, 525 F.3d 855, 859 (9th

Cir. 2008).

However, <u>Rooker-Feldman</u> does not apply to decisions of state agencies.  The Ninth Circuit

holds[5],

> The <u>Rooker–Feldman</u> doctrine does not apply to the actions of the Commission because
> it is a state administrative agency, not a court. The primary statute from which the
> <u>Rooker–Feldman</u> doctrine has been drawn—28 U.S.C. § 1257—does not, by its terms,
> describe state administrative decisions.  More importantly, the Supreme Court has
> recently rejected a claim that the <u>Rooker–Feldman</u> doctrine barred federal district court
> review of adjudicatory decisions of state administrative agencies. As the Court noted:
>
> The Commission also suggests that the <u>Rooker–Feldman</u> doctrine precludes a

---

[5] <u>So. Cal. Edison Co. v. Lynch</u>, 307 F.3d 794, 805 (9th Cir.), modified, 307 F.3d 943 (9th Cir. 2002), and certified
question answered sub nom. <u>So. Cal. Edison Co. v. Peevey</u>, 31 Cal.4th 781 (2003).

1
2
3
4
5

> federal district court from exercising jurisdiction over Verizon's claim. See
> District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct.
> 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44
> S.Ct. 149, 68 L.Ed. 362 (1923). The Rooker–Feldman doctrine merely
> recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not
> authorize district courts to exercise appellate jurisdiction over state-court
> judgments, which Congress has reserved to this Court, see 28 U.S.C. § 1257(a).
> The doctrine has no application to judicial review of executive action, including
> determinations made by a state administrative agency.

6
7

> Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, —— n. 3, 122 S.Ct.
> 1753, 1759 n. 3, 152 L.Ed.2d 871 (2002) (emphasis added).

8    Thus, the motion to dismiss any cause of action on this basis is **DENIED**.

9        **E.**    **Younger Abstention**

10       The defendants are correct that the Younger[6] abstention doctrine requires federal court to

11   refuse to become involved in certain state proceedings.  Younger requires the Court to abstain where,

12   "(1) a state-initiated proceeding is on-going; (2) the proceeding implicates important state interests; (3)

13   the federal plaintiff is not barred from litigating the federal constitutional issues in the state

14   proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of

15   doing so, i.e., would interfere with the state proceeding in a way that Younger disapproves." San Jose

16   Silicon Valley Chamber of Commerce, 546 F.3d 1087, 1092 (9th Cir.2008); Baffert v. California

17   Horse Racing Bd., 332 F.3d 613, 617 (9th Cir.2003).

18       However, the parties note that there is no decision pending by the SPB.  (Doc. 60 at 6; Doc. 66

19   at 4).  Moreover, as discussed above, the Court finds the whistleblower action is not timely.  Thus, the

20   motion to dismiss on Younger grounds is **DENIED**.

21       **F.**    **Eleventh Amendment Immunity**

22       The defendants argue that the CDCR is not a proper defendant under § 1983.  The Eleventh

23   Amendment bars suit against a state unless Congress has abrogated state sovereign immunity or the

24   state has waived it. Holley v. California Dep't of Corrections, 599 F.3d 1108, 1111 (9th Cir.2010). In

25   Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996), the Supreme Court stated: "[E]ach State

26   is a sovereign entity in our federal system; and [ ... ] it is inherent in the nature of sovereignty not to be

27
28

---

    [6] Younger v. Harris, 401 U.S. 37 (1971).

1    amenable to the suit of an individual without its consent." However, when enacting Title VII under its

2    Fourteenth Amendment powers, Congress abrogated the sovereign immunity of states to suits under

3    Title VII. See, e .g., Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). Thus, the Eleventh Amendment

4    does not bar the claims brought under Title VII.  Thus, the motion is **GRANTED** as to the Fourth,

5    through Tenth[7] causes of action as to the CDCR and as to Holland in her official capacity and

6    **DENIED** as to Holland in her individual capacity.

7          **G.      Failure to State a Claim Against Holland**

8          A complaint must state the elements of the plaintiff's claim in a plain and succinct manner.

9    Jones v. Cmty Redevelopment Agency, 733 F.2d 646, 649 (9th Cir.1984). The purpose of a complaint

10   is to give the defendant fair notice of the claims against him, and the grounds upon which the

11   complaint stands. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Supreme Court noted,

12          Rule 8 does not require detailed factual allegations, but it demands more than an
            unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers
13          labels and conclusions or a formulaic recitation of the elements of a cause of action will
            not do. Nor does a complaint suffice if it tenders naked assertions devoid of further
14          factual enhancement.

15   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

16   Conclusory and vague allegations do not support a cause of action. Ivey v. Board of Regents, 673 F.2d

17   266, 268 (9th Cir.1982). The Court clarified further,

18          [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim
            to relief that is plausible on its face." [Citation]. A claim has facial plausibility when
19          the plaintiff pleads factual content that allows the court to draw the reasonable
            inference that the defendant is liable for the misconduct alleged. [Citation]. The
20          plausibility standard is not akin to a "probability requirement," but it asks for more than
            a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint
21          pleads facts that are "merely consistent with" a defendant's liability, it "stops short of
            the line between possibility and plausibility of 'entitlement to relief.'
22

23   Iqbal, 556 U.S. at 678 (citations omitted). If factual allegations are well-pled, a court should assume

24   their truth and determine whether the facts would make the plaintiff entitled to relief; conclusions in

25   the pleading are not entitled to the same assumption of truth. Id.

26          Review of the allegations against Holland are generally conclusory.  For example, the plaintiff

27   _____

28          [7] The Court has already concluded the Tenth cause of action should be dismissed based upon statute of limitations
     grounds.  However, it also grants the motion as to the Tenth cause of action, in the alternative.

1    claims Holland "punitively job-changed" him.  (Doc. 40 at 3)  There are no facts to support this

2    conclusion or, indeed, what this even means.  The plaintiff claims Holland acted "through Mason and

3    McKay" when they reported to B. Philips that there was a pending personnel action against the

4    plaintiff.[8] Id. at 4.  The plaintiff admits that the allegations of these types of allegations are based upon

5    "information and belief."  Id. at 10.  This is insufficient.  Iqbal, 556 U.S. at 678

6         Likewise, the plaintiff fails to allege facts to demonstrate that the mistake Holland made

7    related to the promotion the plaintiff sought was something other than a mistake.  Id.  Though plaintiff

8    alleges that Holland denied him the ability to work "out of class," he fails to allege facts to support

9    that this denial was either retaliatory or discriminatory. Id. at 7.  Though the plaintiff complains that

10   Garcia "was allowed to participate" on an interview panel involving the plaintiff, there are no facts

11   alleged that Holland had any hand in this action.  Id.  Though the plaintiff alleges that he was denied a

12   promotion by Holland, three white and one black staff members were given the promotion.  Id.

13   Though the plaintiff claims that Holland later "stripped" the black staff member of the promotion, he

14   fails to allege any facts to support that this was unlawful.  Id.

15        On the other hand, the plaintiff claims that Holland charged him with a Direct Adverse Action

16   in January 2015.  (Doc. 40 at 8)  This was after the plaintiff had filed complaints of discrimination and

17   retaliation against the CDCR (Doc. 40 at 2, 4) and after he filed a whistleblower complaint with the

18   SBP (Id. at 3).   Notably, however, there are no facts alleged that Holland was aware of these prior

19   complaints, though she was named in the May 2014 complaint (Id. at 4).[9]

20        Moreover, the Court cannot determine to which causes of action the allegations are intended to

21   address.  Notably, each cause of action incorporates all previous allegations and causes of action

22   creating significant ambiguity.  Likewise, the factual allegations are set forth sometimes in a

23   chronological fashion and other times not.  This makes it unclear whether the plaintiff is simply

24   repeating events or whether he is alleging that events that seem to be the same, in fact, are different.

25

26   [8] Indeed, Holland's involvement in the claimed improper conduct is belied by the previous paragraph in which the
     plaintiff admits that Holland *approved* the transfer the plaintiff sought.  Id.

27   [9] Though the plaintiff claims that Holland would not have issued the Adverse Action had the plaintiff been
     interviewed before it issued, he notes, "had he not engaged in protected activity, Defendant Holland's act in creating an

28   Adverse Action would not have occurred in light of OIA's declination to proceed." (Doc. 40 at 8)  In light of the next
     allegation that, in fact, OIA did investigate, the Court cannot determine what these allegations mean.

1    Thus, the second amended complaint is vague and ambiguous and the motion is **GRANTED** with

2    leave to amend as to Holland on the First through Ninth causes of action.

3          **H.    Qualified Immunity**

4          Because the Court finds the plaintiff has not stated a claim against Holland but has granted

5    leave to amend, consideration of the qualified immunity is premature.  The motion on this basis is

6    **DENIED** without prejudice.

7          **I.    Res Judicata/Collateral Estoppel**

8          The defendants argue the plaintiff is seeking, in effect, to have the Court "reverse the prior

9    SPB decisions pertaining to his administrative cases."  (Doc. 49 at 16)  The defendants argue that the

10   plaintiff challenged each of the three Notices of Adverse Actions he received and that he has "litigated

11   each of those in front of an Administrative Law Judge."[10] (Doc. 49 at 10)

12         Under California law, a state employee may challenge a discriminatory on-the-job action *either*

13   by pursuing remedies through the State Personnel Board or via a FEHA claim. State Pers. Bd. v. Fair

14   Employment & Hous. Com., 39 Cal. 3d 422, 431, 703 P.2d 354, 359 (1985) ["The FEHA was meant

15   to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give

16   employees the maximum opportunity to vindicate their civil rights against discrimination . . ."]  If the

17   employee chooses to proceed via the administrative process, he *must* file a petition for writ of

18   administrative mandamus and challenge the findings of the State Personnel Board before he can seek

19   relief via a civil action under FEHA and under 42 U.S.C §§ 1981 or 1983.  Ruiz v. Dep't of Corr., 77

20   Cal.App.4th 891, 899 (2000) quoting Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280,

21   292); University of Tennessee v. Elliott, 478 U.S. 788, 796-798 (1986).  This requirement does not

22   apply when the employee seeks relief under Title VII.  Elliott, 478 U.S. at 796.  In Elliott, the Court

23   held, "On the basis of our analysis in Kremer and Chandler of the language and legislative history of

24   Title VII, we conclude that the Sixth Circuit correctly held that Congress did not intend unreviewed

25   state administrative proceedings to have preclusive effect on Title VII claims."

26

27         ─────────────
           [10] The defendants note also that the plaintiff's "whistleblower" complaint has been heard and decided against him.
28   Id. at 10; Doc. 40 at 10.  Notably, however, the defendants' admit, "Within the context of this type of hearing, the findings
     of the SPB are not afforded preclusive effect if a subsequent civil action is initiated. State Bd. of Chiropractic Examiners v.
     Superior Court (Arbuckle), 45 Cal.4th 963, 976 (2009)." (Doc. 49 at 26)

1    The plaintiff had the right to raise his claims of retaliation and discrimination whether as a

2    defense to the charges brought against him with the SPB or as an affirmative action.  2 CCR 64.5(d).

3    In this action, the plaintiff complains that these SPB actions are evidence of the discriminatory and

4    retaliatory actions of the defendants and of the hostile environment in which he was forced to work.

5    Thus, the motion is **GRANTED** as to the Fourth through Ninth Causes of action. On the other hand,

6    because of the ambiguous, vague and repetitive manner in which the second amended complaint is

7    pleaded, there may be claims raised in it that are not impacted by his failure to challenge the SPB's

8    decisions; the Court just can't tell. Thus, the Court will grant leave to amend.  However, the

9    unreviewed decisions of the SPB are binding upon the Court such that the SPB decisions demonstrate

10   the defendants acted properly in seeking discipline against the plaintiff for his inappropriate conduct

11   on the job. Thus, the plaintiff is advised he **SHALL NOT** be permitted to rely upon the unreviewed

12   decisions of the SPB to support his claims.  On the other hand, because the determination of the State

13   Personnel Board has no preclusive impact on claims brought under the whistleblower act or Title VII,

14   the motion is **DENIED** as to the First, Second, Third and Tenth[11] causes of action.

15       **J.       Redundancy of § 1981 and § 1983 Claims**

16       In <u>Jett v. Dallas Indep. Sch. Dist</u>., 491 U.S. 701, 731–32 (1989), the United States Supreme

17   Court determined that 42 USC § 1981 as set forth in the 1866 Act did not apply to states or to state

18   actors.  The Court held, "We think the history of the 1866 Act and the 1871 Act recounted above

19   indicates that Congress intended that the explicit remedial provisions of § 1983 be controlling in the

20   context of damages actions brought against state actors alleging violation of the rights declared in §

21   1981."  The Ninth Circuit adopted this rationale in <u>Cerrato v. San Francisco Community College</u>

22   <u>District</u>, 26 F.3d 968, 972 (9th Cir. 1994).  However, two years later in <u>Federation of African American</u>

23   <u>Contractors v. City of Oakland</u>, 96 F.3d 1204, 1205 (9th Cir. 1996), the Court held, "We hold that the

24   Civil Rights Act of 1991 creates an implied cause of action against state actors under 42 U.S.C. §

25   1981, and thus statutorily overrules Jett's holding that 42 U.S.C. § 1983 provides the exclusive federal

26   remedy against municipalities for violation of the civil rights guaranteed by 42 U.S.C. § 1981." Thus,

27

28       [11] The Court has already concluded the Tenth cause of action should be dismissed based upon statute of
limitations grounds.  However, it also grants the motion as to the Tenth cause of action, in the alternative.

1   the motion to dismiss the Fifth cause of action on this basis is **DENIED.**

2       **K.**      **Anti-SLAAP motion**

3         The defendants seek to strike Plaintiff's state law claims pursuant to Cal.Code Civ. Proc. §

4   425.16.  This statute "provides for the pre-trial dismissal of certain actions, known as Strategic

5   Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are

6   intended to deter ordinary people 'from exercising their political or legal rights or to punish them for

7   doing so." Makaeff v. Trump University, 715 F.3d 254, 261 (9th Cir.2013) (quoting Batzel v. Smith,

8   333 F.3d 1018, 1024 (9th Cir.2003); Wilcox v. Superior Court, 27 Cal.App.4th 809 (1994)).

9         The anti-SLAPP statute was enacted "to allow early dismissal of meritless first amendment

10   cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v.

11   Wornick, 264 F.3d 832, 839 (9th Cir.2001); see also Dickens v. Provident Life and Acc. Ins. Co., 117

12   Cal.App.4th 705, 713 (2004) (explaining a SLAPP is "a meritless suit filed primarily to chill the

13   defendant's exercise of First Amendment rights"). In relevant part, Section 425.16 provides:

14           A cause of action against a person arising from any act of that person in furtherance of
        the person's right of petition or free speech under the United States or California

15           Constitution in connection with a public issue shall be subject to a special motion to
        strike, unless the court determines that the plaintiff has established that there is a

16           probability that the plaintiff will prevail on the claim.

17   Cal.Code Civ. Proc. § 425.16(b). Accordingly, "the defendant's act underlying the plaintiff's cause of

18   action must itself have been an act in furtherance of the right of petition or free speech." City of Cotati

19   v. Cashman, 29 Cal.4th 69, 78 (2002).

20         When ruling on a motion to strike pursuant to Section 425.16, the Court engages in a two-step

21   process. Metabolife Int'l, 264 F.3d at 839; Daniels v. Robbins, 182 Cal.App.4th 204, 214 (2010). First,

22   a defendant bears the initial burden to demonstrate the challenged causes of action arise from an act in

23   furtherance of the defendant's right of petition or free speech, including:

24           (1) any written or oral statement or writing made before a legislative, executive, or
        judicial proceeding, or any other official proceeding authorized by law, (2) any written

25           or oral statement or writing made in connection with an issue under consideration or
        review by a legislative, executive, or judicial body, or any other official proceeding

26           authorized by law, (3) any written or oral statement or writing made in a place open to
        the public or a public forum in connection with an issue of public interest, or (4) any

27           other conduct in furtherance of the exercise of the constitutional right of petition or the
        constitutional right of free speech in connection with a public issue or an issue of public

28           interest.

1    Cal.Code Civ. Proc. § 425.16(e). If the moving party satisfies this burden, the burden shifts to the

2    plaintiff to demonstrate the probability of prevailing on the challenged claim. <u>Metabolie Int'l</u>, 264

3    F.3d at 840; <u>Daniels</u>, 182 Cal.App.4th at 214. Specifically, the plaintiff "must demonstrate that the

4    complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to

5    sustain a favorable judgment if the evidence submitted by the plaintiff is credited." <u>Jarrow Formulas,</u>

6    <u>Inc. v. LaMarche</u>, 31 Cal.4th 728, 741 (2003) (citation omitted).

7         The anti-SLAPP statute does not apply unless the defendant's conduct underpinning a

8    plaintiff's cause of action involved an act in furtherance of the defendant's "right of petition or free

9    speech under the United States Constitution or the California Constitution in connection with a public

10   issue." See § 425.16, subd. (b)(1); and see also <u>City of Cotati</u>, 29 Cal.4th at 78.

11        In <u>Schaffer v. City & County of San Francisco</u>, 168 Cal.App.4th 992, 1001 (2008), a California

12   Court of Appeal rejected that <u>Garcetti</u> was determinative because Cal.Code Civ. Pro. § 425.16 "also

13   applies to acts protected under the California Constitution."  After this, the California Supreme Court

14   held,

15             Whether or not the First Amendment of the federal Constitution or article I, section 2 of
               the California Constitution directly protects government speech in general or the types
16             of communications of a municipality that are challenged here—significant
               constitutional questions that we need not and do not decide—we believe it is clear, in
17             light of both the language and purpose of California's anti-SLAPP statute, that the
               statutory remedy afforded by section 425.16 extends to statements and writings of
18             governmental entities and public officials on matters of public interest and concern that
               would fall within the scope of the statute if such statements were made by a private
19             individual or entity.

20   <u>Vargas v. City of Salinas</u>, 46 Cal.4th 1, 17 (2009). Thus, the fact that the statements were made within

21   the course and scope of their governmental employment, does not exclude Defendants from the

22   protections of Cal. Code Civ. Pro. § 425.16.

23        On the other hand, the Court has determined already that the plaintiff may not claim that

24   statements made to the SPB and the actions in seeking to impose discipline on the plaintiff that

25   resulted in the SPB actions cannot form a basis to impose liability for the causes of action raised based

26   upon res judicata, the motion to strike is **DENIED** as **MOOT**.

27                                       **ORDER**

28        1.    The motion to dismiss (Doc. 48) the Fourth through Tenth causes of action against the

1  CDCR and Holland in her official capacity is **GRANTED**  without leave to amend;

2          2.       The motion to dismiss (Doc. 48) the Tenth cause of action is **GRANTED** without leave

3  to amend;

4          3.       The motion to dismiss (Doc. 48) the First through Third causes of action against the

5  CDCR is **DENIED**[12];

6          4.       The motion to dismiss (Doc. 48) the First through Ninth causes of action against

7  Holland is **GRANTED** with 20 days leave to amend;

8          5.       The special motion to strike (Doc. 52) is **DENIED** as **MOOT**.

9

10  IT IS SO ORDERED.

11      Dated:   __**July 25, 2016**__                        _____**/s/ Jennifer L. Thurston**
12                                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          [12] However, as noted above, the plaintiff **SHALL NOT** be permitted to rely upon the unreviewed decisions of the
    SPB as evidence of discrimination, retaliation or a hostile work environment against either defendant as barred by  res
28  judicata.

16