**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEROME J. MACK, | ) Case No.: 1:15-cv-01600  JLT |
| Plaintiff, | ) ORDER GRANTING IN PART THE MOTION TO |
| v. | ) DISMISS; ORDER GRANTINGT HE REQUEST |
| | ) TO TAKE JUDICIAL NOTICE |
| CALIFORNIA DEPT. OF CORRECTIONS AND REHABILITATION, et al., | ) (Docs. 76, 85) |
| Defendants. | ) |

The Court set forth the factual allegations of this action in its last order on defendants' motion to dismiss (Doc. 71) and so does not do so again here.  However, since that order issued, Mr. Mack has filed a third amended complaint and continues to rely upon conduct underlying the decisions of the State Personnel Board, which the Court determined cannot be attacked in this action.  (Doc. 71)  Thus, the Court will **GRANT** the Rule 12(b)(1) motion.

On the other hand, even after these allegations are excised, the plaintiff states a claim for race discrimination under 42 U.S.C. § 1981 and retaliation under 42 U.S.C. §§ 1981 and 1983.  Thus, the motion to dismiss under Fed. R. Civ. P. 12(b)(6) is **DENIED**.

**I.     Background**

In its order on the defendants' motion to dismiss (Doc. 71), the Court set forth the factual allegations of the complaint and does not repeat those allegations here.

///

1

1    **II.    Requests for Judicial Notice**

2    Though the defendants request the Court take judicial notice of decisions of the SPB, the

3    plaintiff objects and argues that the records at issue are not public.  (Doc. 79 at 13) However, the Court

4    may take judicial notice of facts that are "capable of accurate and ready determination by resort to

5    sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2).  Indeed, the Court

6    *must* take judicial notice for a judicially noticeable fact "if requested by a party and supplied with the

7    necessary information." Fed.R.Evid. 201(c)(2).  Because the defendants have provided the decisions

8    of the SPB, the Court **GRANTS** the requests and the Court will take judicial notice of the fact that the

9    SPB has determined these actions, the findings issued by that body and the dates on which it issued

10   these findings.  The Court will also take notice of the fact that the plaintiff has not sought writ relief

11   after any of the SPB decisions at issue.[1]

12   **III.   Legal Standards**

13        **A.    Rule 12(b)(1) motion for lack of jurisdiction**

14   Federal Rule of Civil Procedure 12(b)(1) allows a defendant to assert that the court lacks

15   jurisdiction over the subject matter of an entire action or of specific claims alleged in the action. "A

16   motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the

17   complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction

18   in fact." Thornhill Publishing Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir.1979).

19        The Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact as to

20   certain claims. When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in

21   fact, no presumption of truthfulness attaches to the plaintiff's allegations. Id. "[T]he district court is not

22   restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony,

23   to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850

24   F.2d 558, 560 (9th Cir.1988). When a Rule 12(b)(1) motion attacks the existence of subject matter

25   jurisdiction in fact, plaintiff will have the burden of proof that jurisdiction does in fact exist. Thornhill,

26   594 F.2d at 733.

27

28        [1] The Court may take judicial notice of the public filings of the Kern County Superior Court.  Fed. R. Evid. 201(b)(2).

2

1    The defendant's motion 12(b)(1) motion asserts that the plaintiff may not rely upon

2  unreviewed findings of the State Personnel Board to state a claim.  The Court agrees as it set forth in

3  its earlier ruling dismissing these claims without leave to amend.  (Doc. 71 at 12-13)  The Court agrees

4  further that the plaintiff may not raise defenses to those personnel decisions in this action that would

5  undermine those decisions. University of Tennessee v. Elliott, 478 U.S. 788, 796-798 (1986).

6  Notable, in University of Tennessee, the United States Supreme Court held, "

7    We have previously recognized that it is sound policy to apply principles of issue
    preclusion to the factfinding of administrative bodies acting in a judicial capacity. In a
8    unanimous decision in United States v. Utah Construction & Mining Co., 384 U.S. 394,
    86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), we held that the factfinding of the Advisory
9    Board of Contract Appeals was binding in a subsequent action in the Court of Claims
    involving a contract dispute between the same parties. We explained:
10
      "Although the decision here rests upon the agreement of the parties as modified
11      by the Wunderlich Act, we note that the result we reach is harmonious with
      general principles of collateral estoppel. Occasionally courts have used
12      language to the effect that res judicata principles do not apply to administrative
      proceedings, but such language is certainly too broad. When an administrative
13      agency is acting in a judicial capacity and resolves disputed issues of fact
      properly before it which the parties have had an adequate  opportunity to
14      litigate, the courts have not hesitated to apply res judicata to enforce repose."
      Id., at 421–422, 86 S.Ct., at 1559–1560 (1966) (footnotes omitted).
15
    Thus, Utah Construction, which we subsequently approved in Kremer v. Chemical
16    Construction Co., 456 U.S., at 484–485, n. 26, 102 S.Ct., at 1899, n. 26, teaches that
    giving preclusive effect to administrative factfinding serves the value underlying
17    general principles of collateral estoppel: enforcing repose. [Footnote] This value, which
    encompasses both the parties' interest in avoiding the cost and vexation of repetitive
18    litigation and the public's interest in conserving judicial resources, Allen v. McCurry,
    449 U.S., at 94, 101 S.Ct., at 414, is equally implicated whether factfinding is done by a
19    federal or state agency.

20    Having federal courts give preclusive effect to the factfinding of state administrative
    tribunals also serves the value of federalism. Significantly, all of the opinions in
21    Thomas v. Washington Gas Light Co., 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757
    (1980), express the view that the Full Faith and Credit Clause compels the States to
22    give preclusive effect to the factfindings of an administrative tribunal in a sister State.
    Id., at 281, 100 S.Ct., at 2660 (opinion of STEVENS, J.); 287–289, 100 S.Ct., at 2663–
23    2664 (WHITE, J., concurring in judgment); 291–292, 100 S.Ct., at 2666
    (REHNQUIST, J., dissenting). The Full Faith and Credit Clause is of course not
24    binding on federal courts, but we can certainly look to the policies underlying the
    Clause in fashioning federal common-law rules of preclusion. "Perhaps the major
25    purpose of the Full Faith and Credit Clause is to act as a nationally unifying force," id.,
    at 289, 100 S.Ct., at 2664 (WHITE, J., concurring in judgment), and this purpose is
26    served by giving preclusive effect to state administrative factfinding rather than leaving
    the courts of a second forum, state or federal, free to reach conflicting results.
27    [Footnote] Accordingly, we hold that when a state agency "acting in a judicial capacity
    ... resolves disputed issues of fact properly before it which the parties have had an
28    adequate opportunity to litigate," Utah Construction & Mining Co., supra, 384 U.S., at

3

422, 86 S.Ct., at 1560, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

Notably, Mack took the position before the SPB —and still does—that the charges brought by the CDCR were untrue.  To the extent the SPB found the actions were true, whether the charges were brought due to discriminatory or with retaliatory motives do not impact that, in fact, the charges *were* true.  Likewise, as to the discipline imposed as to SPB case number 15-0147, Mack *did* raise the defense that the actions were taken in retaliation for him bringing a whistleblower complaint.  (Doc. 85 at 10)  However, the SPB expressly found that Mack failed to prove this claim.  Id.

Consequently, for example, though Mack may rely upon allegations that the due to discriminatory motives or in retaliation, the charges were not raised together in one adverse action (such as set forth in ¶ 155), he cannot assert that he did not take actions or he did not fail to take actions, when the SPB decided to the contrary.  Likewise, he cannot claim that he was not deserving of the charges being brought or the punishment imposed for his conduct.  Finally, he cannot raise defenses that would now undermine the findings of the SPB because, due to his failure to seek a writ, these findings are unassailable.  Based upon this analysis, the Court agrees that none of the allegations that are inconsistent with the SPB findings, specifically, paragraphs 56-60, 62, 66, 82-85, 95-109, 111, 129-133, 136-139, 141-143, 151-152, 154 cannot be used to state a claim on the Fourth, Fifth and Sixth Causes of Action. (Doc. 72)  Likewise, the claims of damages incurred as a result of the SPB determinations cannot be recovered in this action.  (See Doc. 72 at 17, ¶¶ 159-162).  To this extent, the Rule 12(b)(1) motion is **GRANTED**.

**B.     Rule 12(b)(6) motion to dismiss for failure to state a claim**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990). The plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court

1    accepts as true the allegations in the complaint and construes them in the light most favorable to the

2    plaintiff. Iqbal, at 678.  However, the Court ignores conclusions cast in the form of factual allegations.

3    Id. The court is permitted to consider material which is properly submitted as part of the complaint,

4    documents not physically attached to the complaint if their authenticity is not contested and the

5    plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los

6    Angeles, 250 F .3d 668, 688-89 (9th Cir.2001).

7              **i.        Fourth Cause of Action for race discrimination under 42 USC § 1981**

8              The elements of a racial discrimination claim in an employment context brought under § 1981

9    are the same as those brought under Title VII.  To establish a prima facie case of disparate treatment,

10   the employee must allege "(i) that he belongs to a racial minority; (ii) that he applied and was qualified

11   for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was

12   rejected; and (iv) that, after his rejection, the position remained open and the employer continued to

13   seek applicants from persons of complainant's qualifications. McDonnell Douglas Corp. v. Green, 411

14   U.S. 792, 802, (1973).  The allegations "give rise to an inference of unlawful discrimination." Jurado

15   v. Eleven-Fifty Corp., 813 F.2d 1406, 1410 (9th Cir. 1987).

16             Mack alleges that of the 86 sergeants at CCI, only seven are Black.  (Doc. 72 at 5 ¶ 44)  Of the

17   36 lieutenants, only one is Black.  Id.  This lieutenant was promoted to this position while Holland was

18   off work and an acting warden was taking her place.  Id. at 5 ¶ 45.  During Holland's three year term

19   as CCI's Warden, she did not promote any Black employees, despite having 20 opportunities to do so.

20   Id. at 6 ¶ 46.

21             In 2013, before there were any Black lieutenants, Mack was ranked first on the list for

22   promotion to that position. (Doc. 72 at 47)  In February 2014, Mack applied for an "acting" lieutenant

23   position and, though he was recommended for the position, Holland did not select him.  Id. at 6 ¶ 53-

24   55.  Mack was not selected due to his having a disciplinary investigation open against him.  Id. at 7 ¶

25   56.  In April 2014, Holland refused to allow Mack to be considered for an "acting" position while his

26   disciplinary action was investigated though she promoted five white sergeants to "acting" lieutenant

27   positions—none more qualified than him—during this interval. Id. at ¶¶ 62-63. However, Holland has

28   allowed other similarly situated non-Black employees with disciplinary actions/investigations pending,

1    to be in positions that provided them increased pay.  (Doc. 72 at 3 ¶ 19)  These allegations sufficiently

2    give rise to a cause of action for discrimination under § 1981.  Thus, the Rule 12(b)(6) motion is

3    **DENIED** as to this cause of action.

4               **ii.**       **Fifth and Sixth Causes of Action for retaliation under 42 USC §§ 1981 and**

5               **1983**

6          To state a claim for retaliation under 42 USC §§ 1981 and 1983, for violation of the First

7    Amendment, the plaintiff must allege the same elements as in a Title VII retaliation claim but, under §

8    1981, he must also demonstrate a discriminatory animus.  CBOCS West, Inc. v. Humphries, 553 U.S.

9    442, 455-456 (2008).  The plaintiff must demonstrate that he engaged in a protected activity, his

10   employer took adverse action against him and a causal relationship between his activity and the

11   adverse action.  Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010).  The

12   adverse action may be any action that a reasonable employee would have found "materially adverse"

13   and would be sufficient to "dissuade[ ] a reasonable worker from making or supporting a charge of

14   discrimination."  Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  In a retaliation

15   case a plaintiff must demonstrate that there had been an underlying section 1981 violation.  CBOCS, at

16   451-452.

17         In May 2014, Mack filed a complaint with the EEOC/DFEH related to claims of discrimination

18   and retaliation and named Holland in it.  (Doc. 72 at 7 ¶ 64)  In connection with his EEOC/DFEH

19   complaint, an EEOC investigator interviewed Holland in late 2014 or early 2015.  Id. at ¶ 69.  Around

20   May or June 2014, Mack also filed a "whistleblower" complaint.  Id. at 8 ¶ 66-67.  Mack felt like he

21   had been ridiculed and targeted by the Associate Warden at an EEO training in June 2014 and he

22   documented his concerns to Holland.  Id. at 70-72.  However, Holland failed to take any disciplinary

23   action against the Associate Warden.  Id. at 9 ¶ 73.

24         After Mack filed an internal EEO complaint, Holland issued Mack and those he identified in

25   his EEOC/DFEH complaint, to "cease and desist" all contact except for that necessary to complete

26   work-related tasks.  (Doc. 72 at 9 at ¶¶ 76-78)

27         On July 11, 2014, Mack filed a "dual administrative charge with the EEOC and DFEH" and

28   named Holland.  (Doc. 72 at 9 ¶ 80)  A few days later, Mack had an interview at Ironwood State

1    Prison and, though he was selected to receive the promotion, Holland directed McKay—the Employee

2    relations Officer—to report to Ironwood officials that there was a pending employee investigation.[2]

3    Id. at ¶ 84.  Mack alleges that Holland had discretion to provide this information.  Id. at 4 ¶ 30.  By the

4    time Holland instructed McKay to provide the information to Ironwood, the EEOC had notified the

5    CDCR of Mack's two EEOC complaints.  Id. at 10 ¶ 90-91, 124.

6            When Mack was "redirected out of transportation," Holland allowed Garcia to notify Mack of

7    the change despite knowing that Garcia and Mack were at odds and that by doing so, Mack suffered an

8    increase in his hypertension and exacerbated the hostile work environment.  (Doc. 72 at 11 ¶¶ 93-94)

9    In addition, on August 19, 2014, Holland removed him "from his Preferred Post and Bid assignment"

10   and prohibited him from accepting assignments that included transporting inmates."  Id. at ¶ 106.

11   Holland took this action in part due to an "equal Employment Opportunity investigation.[3]"  Id. at ¶

12   107.  Holland's action occurred immediately after Mack returned from appearing at the hearing on his

13   whistleblower complaint.  Id. at ¶ 110.

14           Once again, in September 2014, though Mack was the first to submit his request to work in an

15   "out of class assignment," was qualified to do so and had sufficient seniority, Holland refused to allow

16   Mack to do so.  (Doc. 72 at 12 ¶¶ 112-113)  In that same month, Mack appeared for a promotional

17   interview and found that the interview panel was made up of three people with whom he had a

18   conflict.  Id. at 13 ¶¶ 115-118.  Holland assigned each of the members to sit on the interview panel.  Id.

19   at ¶ 117.  Holland did not select Mack for the promotion and those who were selected had less

20   experience than he did.  Id. at ¶¶ 119-121.

21           On September 23, 2014, Mack submitted another complaint with the EEOC/DFEH against the

22   CDCR and alleged discrimination and retaliation.  (Doc. 72 at 13 ¶ 122)  The EEOC notified the

23   CDCR of this complaint around October 29, 2014.  Id. at 14 ¶ 128.  The CDCR responded on

24   February 10, 2015.  Id. at 15 ¶ 140.

25

26   ───────────────

27   [2] According to the Court's prior order and the information presented in the request for judicial notice (Doc. 76), the plaintiff may not assert that this information is not true (See ¶ 83) because, in fact, it was true.
[3] The Court finds it likely that this EEO investigation stemmed from Mack's refusal to work with a female based upon her

28   gender but it is also possible this referred to the EEO complaints Mack submitted.  At this stage, the Court must accept the interpretation that supports the causes of action.

1    In 2014, Mack was subject to three adverse personnel actions that could have been combined

2  in one but Holland chose to have them separated into three.  (Doc. 72 at 16 at 155).

3    The Court finds that these allegations are sufficient to demonstrate retaliation under § 1983.

4  Therefore, the motion to dismiss the Sixth Cause of Action is **DENIED**.  Also, because the Court finds

5  Mack has provided sufficient allegations that these acts would deter a reasonable person from

6  complaining of discrimination and has set forth a claim of discrimination under § 1981 the motion to

7  dismiss the Fifth Cause of Action is **DENIED.**

8                                                **ORDER**

9    1.    The motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) is

10  **GRANTED**  without leave to amend. The Fourth, Fifth and Sixth Causes of Action may not rely upon

11  paragraphs 56-60, 62, 66, 82-85, 95-109, 111, 129-133, 136-139, 141-143, 151-152, 154 of the third

12  amended complaint;

13    2.    The motion to dismiss the Fourth, Fifth and Sixth Causes of Action under Fed. R. Civ.

14  P. 12(b)(6), is **DENIED;**

15    3.    The defendants SHALL answer the complaint within 14 days.

16

17  IT IS SO ORDERED.

18    Dated:   **October 5, 2016**                        **/s/ Jennifer L. Thurston**

19                                                    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

8